# CASES

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY,

### MAY TERM, 1863.

---

GILBERT SCHENCK and others *vs.* JOHN G. SCHENCK and LISCOMB R. TITUS, executors of Garret J. Schenck, deceased.

1. Where the executors of an executor have received and inventoried as part of the estate of their testator, a trust fund held by him at his death in the character of *executor*, and not as trustee, and have settled their final account jointly, they are jointly chargeable as *executors*, with the balance thus found to be in their hands.

2. The rule appears to be, that if a part of the assets has been clearly set apart, and appropriated by the executor to answer a particular trust, he will be considered to hold the fund as trustee for the trust, and no longer as mere executor. This principle is applied to protect the interests of *cestui que trusts*.

But how far it will avail to protect the executor or his representatives—*Query*.

3. But where a fund is not treated by the executor as a trust fund, nor invested according to the provisions of the will creating it, but is used by him as his own property, or invested in the name of the executors of his testator, the estate of such executor is liable therefor, and passes into the hands of his executors charged with the payment of the trust fund. As executors, they are bound to account.

4. Upon the death of one of several co-trustees, the *office* of trustee will devolve with the estate upon the survivor, and ultimately upon the heir

or personal representatives of the last survivor. Trusts of real estate, upon the death of the trustee, devolve upon his heir-at-law; trusts of personalty vest in his executor or administrator.

5. The probate of the will is conclusive evidence of the executor's acceptance of the trust. It is not discretionary with the executor, whether he will or will not act as trustee. By accepting the office of executor, he becomes *ex-officio* trustee in the stead of his testator, charged with all the duties and responsibilities of the office, and he will be decreed in equity to perform the trust.

6. An executor has an undoubted legal right to leave the active administration of the estate to his co-trustee, but neither by his tacit assent to the acts of his co-trustee, nor by the actual transfer of the legal title to the property, can he acquit himself of his responsibility.

7. If a trustee, by his own negligence, suffers his co-trustee to receive and waste the trust fund, when he has the means of preventing such receipt by the exercise of reasonable care and diligence, he will be held responsible for the loss.

*P. L. Voorhees*, for complainants.

The executors received this money either as executors of surviving executor of John Schenck, or as executors of surviving trustee, under will. Legacy is to executors in trust.

Real estate is by the will directed to be converted into personal. It is regarded in equity as personal. *Scudder's Ex'rs* v. *Vanarsdale*, 2 *Beas.* 109; *Rinehart* v. *Harrison's Ex'rs, Bald.* 177; *Hill on Trustees* 303.

Where there are several trustees appointed, on the death of one, the whole goes to the survivors; on the death of the last trustee, it goes to his personal representatives. *Willis on Trustees* 53–4.

If the defendants take as executors of executor, we are clearly entitled to an account. *Nix. Dig.* 276, § 4.

It is admitted that the fund is in the hands of one executor; when in the hands of one executor, entitled to an account against all. *Norton* v. *Turvill*, 2 *P. W.* 144; 2 *Williams on Ex'rs* (ed. 1855) 1760, *note r.*

Justice will not be done by a simple decree for account. There must also be a decree to pay over the fund. *Adams' Eq.* (1854) 226.

It is true the executors never qualified as trustees. But being really such, equity will not allow trust to be lost by death of one of them. *Hill on Trustees* 171.

By the settlement of their joint account the executors admit a fund of $3000 in their hands, for which they are jointly accountable. The defence of Titus is, that he thought Schenck worth $14,000, but before the suit commenced, he had full knowledge of his insolvency. These circumstances make him responsible for trust fund.

As to when trustees are responsible. 3 *Lead. Cases in Eq.* 468.

With the knowledge that John G. Schenck was insolvent, Titus failed to invest the trust money properly, but suffered him to take it. It was his duty to have protected that fund. 2 *Story's Eq. Jur.*, § 1283 ; *Adams' Eq.* 59.

By omitting to have the fund secured, he made himself liable. 3 *Lead. Cases in Eq.* 465–66–68–70 ; *Hill on Trustees* 309 ; 2 *Williams on Ex'rs* 1548.

Will gives express directions to invest trust fund in real estate. The direction is binding. 3 *Lead. Cases in Eq.* 471–4. If trustees neglect to comply, they all become responsible.

The allegations of the answer, no answer to the charges of the bill ; mere confession and avoidance ; they must be proved. 3 *Lead. Cases in Eq.* 470–1 ; 2 *Ibid.* 125.

We are entitled to costs against the trustees. *Warbass* v. *Armstrong*, 2 *Stockt.* 263.

*Mr. Voorhees* further cited *Wills* v. *Cooper*, 1 *Dutcher* 161 ; *Fennimore* v. *Fennimore*, 2 *Green's Ch. R.* 296 ; *Laroe* v. *Douglass*, 2 *Beas.* 308 ; *Bellerjeau* v. *Ex'rs of Kotts*, 1 *South.* 359 ; *Hill on Trustees* 283, *note*.

*Beasley*, for L. R. Titus.

The whole scope of the bill is to charge Titus jointly with the other defendant as recipient of the fund, and to hold them jointly responsible for *that* cause.

The whole case rests on the charge of negligence. Where is the negligence to charge Titus? It is said he knew of the

trust, and of Schenck's insolvency. The affidavit don't show it.

The co-trustee not responsible unless from acquiescing, standing by and permitting fraud.

The charge is clearly against the defendants as trustees, not as executors. The question under the bill is not how far the executor has become liable by settling joint account, but how far the trustee has become liable by permitting his co-trustee to take the fund.

Mere passiveness will not make him liable. But if trustee co-operates to put trust fund into the hands of his co-trustee, then he is responsible; not for mere negligence.

The fact that the defendants are sued as trustees is important. It shuts out the question of estoppel by the settlement of the joint account as executors.

The complainant will not be permitted to set up decree in Orphans Court as an estoppel, inasmuch as he opened the inquiry in the bill as to who did receive the trust fund. The complainant makes the inquiry, and Titus answers under oath that he did not receive it.

Estoppel is *stricti juris*. It may be waived. Complainant's opening the inquiry is in fact a waiver.

Estoppel must be pleaded, if party has an opportunity. It then becomes matter *in pais*.

The case has been argued upon the assumption that on the death of trustee, the *office* devolves on his representatives. *Hill on Trustees* 303. The doctrine relates to *property*; not to the office. *Lewin on Trustees* 279.

Executor of an executor is bound to take care of the property of the estate, but not bound to execute the office of trustee held by the executor. This idea is countenanced by the statute. *Nix. Dig.* 578, § 13.

The fund in question, over and above the Runkle Rea note, being mingled with the general estate, was properly assets. The *cestui que trusts* could have no preference over other creditors, if the first executor had died insolvent. *Moses* v. *Murgatroyd*, 1 *Johns. Ch. R.* 128; *Kip* v. *Bank of New York*, 10 *Johns. R.* 63.

*Mr. Beasley* further cited 2 *Williams on Ex'rs* 1664; *Adair* v. *Shaw*, 1 *Sch. & Lef.* 243; *Cook* v. *Cook*, *Halst. Dig.* 465; *Langford* v. *Gascoyne*, 11 *Vesey* 334; *Bacon* v. *Bacon*, 5 *Ibid.* 331; *Sadler* v. *Hobbs*, 2 *Bro. Ch. R.* 115; 2 *Story's Eq. Jur.*, § 1281, note 2; *Duchess of Kingston's case*, 2 *Smith's Lead. Cases* 444, note; *Kilheffer* v. *Herr*, 17 *Serg. & R.* 319; *Howard* v. *Mitchell*, 14 *Mass.* 242; *Livingston* v. *Combs*, *Coxe* 42; *Swinburne on Wills*, part 6, § 21; *Nix Dig.* 581, § 27; *Goble* v. *Andruss*, 1 *Green's Ch. R.* 66; *Black* v. *Whitall*, 1 *Stockt.* 584; *Fennimore* v. *Fennimore*, 2 *Green's Ch. R.* 296; *Nix. Dig.* 578, § 13.

THE CHANCELLOR. John Schenck, late of the county of Hunterdon, in and by his last will and testament, bearing date on the twelfth of August, 1823, among other things gave and bequeathed as follows: "I do give and bequeath one other ninth part of the said residue of my estate to my executors hereinafter named, upon this special trust and confidence, and to the intent and purpose that my said executors shall place the same out at interest on landed security, or such security as the Orphans Court may approve, and shall pay the interest thereof annually, as they shall receive the same, into the proper hands of my said son Gilbert, during his natural life; and that upon his death the interest, if any remaining, and the principal sum shall be equally divided between, and paid to his children that may be then living, and in case any of them shall have died leaving issue, such issue to take the parent's share, to be paid to the said children, if of age, or to the guardians of such of them as may be minors, as soon as conveniently may be after my son Gilbert's death, deducting such reasonable expenses and allowance for the care and management of the said trust as the Orphans Court shall allow."

On the fifth of April, 1854, there came to the hands of Garret J. Schenck, the sole surviving executor, on account of the principal of the residuary legacy to the complainants, $2160.34. Of this sum $1101.38 was paid in cash. The

balance consisted of a note of Runkle Rea to the executors for $1058.96. The fund remained in his hands unchanged until his death.

By his will he appointed his son, John G. Schenck, and his son-in-law, Liscomb R. Titus, the defendants in this cause, his executors. On the twenty-fourth of June, 1858, they filed an inventory of the estate of their testator, amounting to $14,873. At September Term, 1859, they settled their joint final account, by which, after charging themselves with the amount of the inventory, they deduct therefrom the sum of $1058.96 (the amount of the note of Runkle Rea), as trust money of Gilbert Schenck, leaving a balance of $13,814.32, with which they charge themselves, and after deducting all disbursements, including commissions and $9000 of special pecuniary legacies, there remained in the hands of the executors a net residue of the estate of $3745.45. The complainants seek to charge the defendants, jointly, with the amount of the trust fund in the hands of their testator at the time of his death.

A decree *pro confesso* has been taken against John G. Schenck, one of the defendants, for want of an answer. Liscomb R. Titus, the other defendant, has answered, alleging by way of defence, that as executor, he received no part of the funds belonging to the estate of his testator, but that the whole assets of the estate were received and administered by his co-executor, John G. Schenck, who alone is responsible for the trust fund in the hands of his testator.

The sole question to be decided is, whether, upon the ascertained facts of the case, Titus is liable for the trust money due to the complainants, or whether Schenck, the co-executor, is alone liable. If the fund was in the hands of the defendants' testator, Garret J. Schenck, at his death as executor of his father, and not as trustee, it seems clear that the defendants are jointly liable as executors of the executor. He received the fund from the estate of his co-executor, and gave his receipt for it as executor, and not as trustee. The fund continued in his hands unchanged

until his death. He did not invest it in real estate, or under the direction of the Orphans Court, as required by the will. The Runkle Rea note was given to the executors in that character, and was held by Garret J. Schenck, the surviving executor, unchanged until his death. The cash received by him as a part of the fund was mingled with his own estate, and so continued when his estate passed into the hands of his executors. He did nothing whatever to distinguish it from the bulk of the testator's estate. The estate remained after his death unchanged by the defendants. The Runkle Rea note still continues, if the answer is to be relied upon, in the name of the executors of John Schenck, deceased. The balance of the fund came to the hands of the defendants, as part of the property of their testator. It was included in their inventory of his estate. It continued in their hands until the final settlement, when it was deducted from the amount with which the executors had charged themselves. This is the account given of the matter by the answer, and I think it is the true statement of the facts. The complainants, when filing their bill, appear to have supposed that the whole amount of the trust fund, including the Runkle Rea note, had been included in the inventory. And this conclusion was very natural, from the fact that the precise amount of that note was, upon the final settlement, deducted from the sum with which the executors had charged themselves. It seems probable indeed, that the surrogate, or whoever stated the account, supposed that that note constituted the entire trust estate, for it is deducted as the trust money of Gilbert Schenck, retained by John G. Schenck, one of the accountants. But that note is not included in the inventory, and it seemed to be conceded upon the argument, that it is still in existence and in the hands of one of the defendants. The deduction of the amount of the note, therefore, from the amount of the inventory, must either have been from a mistaken supposition that the note was included in the inventory, or that it covered the precise balance of cash in the hands of the executors. But it did not cover it.

Independent of the Roa note, and of the interest, there was, at the date of the settlement, a cash balance of $1101.38 of the principal of the trust fund in the hands of the executors. Regarding the trust fund in the hands of Garret J. Schenck at his death, as held by him in his character of executor, there is nothing in the case that can relieve the defendants from joint liability as his executors. They received and inventoried his estate, and settled their final account jointly as executors. Under such settlement and decree, the executors are jointly chargeable with the balance thus ascertained to be in their hands. *Bellerjeau* v. *Ex'rs of Kotts*, 1 *South.* 359; *Fennimore* v. *Fennimore*, 2 *Green's Ch. R.* 296; *Laroe* v. *Douglass*, 2 *Beas.* 308.

But it is urged that neither the facts of the case, nor the frame of the bill, will justify a decree against the defendants as executors of an executor. That the funds were in the hands of Garret J. Schenck, not as executor of John Schenck, but as trustee of the complainants, and that the defendants held the fund, not as executors, but as trustees.

It appears by the will of John Schenck, that the fund in question, being one ninth of the residue of his estate, was bequeathed to his executors as trustees. The bill alleges that, after they had settled their final account as executors, the fund remained in the hands of Peter Voorhees, one of the executors, in trust for the complainants, having been separated from the rest of the estate for that purpose. That after the death of Peter Voorhees, the fund was paid by his representatives to Garret J. Schenck, then being the sole surviving executor of John Schenck, and was received by him as the distributive share of Gilbert Schenck, in the estate of his father, left as a trust fund in the hands of the executors. The rule appears to be, that if a part of the assets has been clearly set apart and appropriated by the executor to answer a particular trust, he will be considered to hold the fund as trustee for those trusts, and no longer as mere executor. *Hill on Trustees* (ed. 1857) 215, 237, 297, 364.

This principle is applied to protect the interest of the *cestui*

*que trusts*, but how far it will avail to protect the executor or his representatives from responsibility, is another and a different question.

A decisive answer to this view of the case would seem to be that Garret J. Schenck, the defendant's testator, did not treat the fund in his hands as trustee. It was not invested pursuant to the will of John Schenck. It was either used by him as his own property, or invested in the name of the executors of John Schenck. His estate was liable for the money. It passed into the hands of his executors, charged with the payment of the trust fund. As executors, therefore, they are bound to account.

But admitting that Garret J. Schenck at his death held the fund in the character of a trustee, still the question remains, are not his executors jointly liable for the trust fund ?

Upon the death of one of several co-trustees, the *office* of trustee will devolve, with the estate, upon the survivor, and ultimately upon the heir or personal representatives of the last survivor. Trusts of real estate, upon the death of the trustee, devolve upon his heir-at-law. Trusts of personalty vest in his executor or administrator. *Hill on Trustees* 175 ; *Willis on Trustees* 53 ; *Lewin on Trustees* 205.

Not only the estate but the office of trustee is devolved upon the executor. The probate of the will is conclusive evidence of his acceptance of the trust. It is not discretionary with the executor whether he will or will not act as trustee. By accepting the office of executor he becomes *ex officio* trustee in the stead of his testator, charged with all the duties and responsibilities of the office, and he will be decreed in equity to perform the trust. *Harvey* v. *Harvey, Reports Temp. Finch* 363.

By accepting the office of executors, these defendants became co-trustees of the fund in question, and jointly liable for the amount which came to their hands. There came to the hands of the executors of the estate of their testator over $12,000, charged with the payment of this trust fund. They paid $9000 of legacies, and there remained a net bal-

ance in their hands on the settlement of the estate, of $3745.-45, which went to the residuary legatee. The first duty of the executors was to have invested the trust fund, in pursuance of the instructions of the will, in real estate, or under the direction of the Orphans Court. The one half of it was confounded with the assets of the testator, and the balance was suffered to remain at interest upon a promissory note without security, given to the executors of the original testator, which may or may not prove available. As an excuse for this neglect, one of the trustees, the only one who is responsible or makes defence, says he received none of the trust funds, and he deemed it unnecessary to participate actively in the administration of the estate, as his co-trustee was the sole residuary legatee and was worth at least $14,-000, after the payment of his debts. But the fact that he confided in the pecuniary ability or personal integrity of his co-trustee, was no justification of his neglect of an imperative duty. The answer further alleges that the defendant did not contribute, in any way, to put the trust money, or any part of it, in the possession or under the control of John G. Schenck. But the evidence shows not only that the entire estate of the testator came to the hands of these executors jointly, as in law it did, but that they exhibited a joint inventory under the oath of both executors, showing that over $14,800 of estate had come to their possession, including over one half of the trust fund itself, and charged with the payment of the whole of it. Mr. Titus not only exhibited this joint inventory under oath, but he consented to the payment, out of the estate, of $9000 of legacies. He received from his co-executor $2000, a legacy to his own wife. He settled a joint account, claiming credit for the payment of all these legacies, and claiming commissions on the whole amount of the inventory; not deducting even the specific portion of the trust estate included within it. As executor, he had the legal title to this property and the right to control it. It does not appear that his co-executor ever denied his right, or objected to his control. He took such active

part in the management of the estate as to guard his own rights, and secure his own legacy and his own commissions. Had he taken the same care of the trust fund committed to his keeping, this controversy would never have arisen. He had an undoubted legal right, as executor, to leave the active administration of the estate to his co-trustee. But neither by his tacit assent to the acts of his co-trustee, nor by the actual transfer of the legal title to the property, can he acquit himself of his responsibility.

If a trustee, by his own negligence, suffers his co-trustee to receive and waste the trust fund, when he had the means of preventing such receipt by the exercise of reasonable care and diligence, he will be held responsible for the loss. 2 *Story's Eq.*, § 1273; *Adams' Eq.* 58, 59; *Laroe* v. *Douglass*, 2 *Beas.* 308.

It is sometimes said, that the application of this principle of law operates harshly against a trustee acting in good faith. But in the present case, I think there is no ground even for that suggestion. Mr. Titus, when he accepted the executorship of the estate of his father-in-law, knew of the existence of this trust. He was apprized of it by the testator before his death. Soon after the death of the testator, his son, the co-trustee and brother-in-law of Mr. Titus, exchanged with him the farm devised to him by his father's will, for an extensive hotel in the city of Trenton. The son incurred heavy expenditures in the repairs and improvements of the property thus acquired. He embarked, moreover, largely in a business which Mr. Titus himself characterizes as hazardous. Within three years from his father's death, these steps led to the utter insolvency of the executor, or to the fraudulent concealment of his property, and his absconding from his creditors. Most of these steps were with the knowledge of Mr. Titus. He acted as his agent, book-keeper and counsellor in many of his affairs. He was not only a near connection, but on terms of personal intimacy with him. It appears from his evidence, that he apprehended his insolvency before it occurred, and took measures in the hope of securing

himself, but he made no effort to secure the trust fund which had been committed to his keeping.

The case appears to me to be clearly one in which the principle should be inflexibly maintained, and where no injustice can result from its application.

The defendants are jointly liable for the trust fund. There must be an account, and the fund be brought into court.

The complainants are entitled to a decree accordingly.